# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

UNITED STATES OF                )
AMERICA,                        )
                                )
v.                              )          CR424-100
                                )
OLEG PROKHNENKO;                )
ALEX SAINT, also known as       )
OLEKSANDER TANASENKO;           )
and ANDREI ZATSIRKA;            )
                                )
    Defendant.              )

## **ORDER**

Defendants in this case are charged with conspiracy to violate the Arms Export Control Act ("AECA") and the International Traffic in Arms Regulations ("ITAR"), in violation of 18 U.S.C. § 371, and Defendants Saint and Zatsirka are charged with violation of the AECA and ITAR, in violation of 22 U.S.C. § 2778.  *See generally* doc. 3 (Indictment). Defendants Saint and Zatsirka are, or were, enlisted in the United States Army and allegedly abused their positions "to acquire export-controlled U.S. defense articles, including a manual on the operation and maintenance of the U.S. military's howitzer weapon systems and firing tables for one of the U.S. military's mortar weapons systems." *Id*. at 2.

Those materials were then allegedly passed to Prokhnenko, a Russian citizen, in Ukraine. *See generally id.* Currently before the Court are Defendants Saint and Zatsirka's Motions for a bill of particulars, doc. 70, for *Brady* material, doc. 71, and for a *James* hearing, doc. 74. The Government has responded. Docs. 82, 83 & 85. Defendants have replied. Docs. 89 & 90. On January 26, 2026, the Court held a hearing on the Defendants' Motions. Doc. 99. They are, therefore, ripe for disposition.

## I.    Motion for Bill of Particulars (Doc. 70)

Count Two of the Indictment alleges that Defendants Saint and Zatsirka, jointly, "willfully exported . . . technical data related to a defense article, that is the Army TM 9-1025-215-10 and Marine Corps TM 104-07C-10/1C Operator Manual for the 155-mm, M777, and M777A2 Howitzer . . . ," (the "Manual"). Doc. 3 at 11. Defendants' Motion points out that the applicable statutory and regulatory provisions prohibit the export of "technical data," defined as "information . . . which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles," including the Howitzer. Doc. 70 at 2 (internal quotation marks and citations omitted). "Technical data," in the relevant sense

2

does not include general scientific or technical principles, information in the public domain, or "basic marketing information on function or purpose or general systems descriptions of defense articles." *Id.* at 2-3 (internal quotation marks and citations omitted). While Defendants concede that the Manual *includes* "technical data," they argue it also includes material that is not "technical data." *Id.* at 3. Because the Manual is 1,192 pages long, Defendants seek a bill of particulars to provide "a precise description . . . of exactly what information within the Manual constitutes 'technical data' within the meaning" of the applicable statutes and regulations. *Id.* The Government does not dispute Defendants' understanding of the applicable statute, but asserts that the Manual's table of contents, and a supplemental letter from the Department of State "identifying specific portions of [the Manual] that qualify as technical data," are sufficient to provide Defendants with sufficient information to mount their defense. Doc. 82 at 5-6.

"The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at

trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense. [Cit.] A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (citations omitted). Whether to order a bill of particulars is at the Court's discretion and requires a showing that the information sought is truly necessary, and not merely helpful, for preparing a defense. *See United States v. Pate*, 2018 WL 3825219, at *1 (S.D. Ga. Aug. 10, 2018) (citations omitted). Of particular relevance here, as another court has observed, "[a] bill of particulars is not designed to . . . obtain the precise way in which the government intends to prove its case[, or] interpret its evidence for the defendant . . . ." *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003); *see also, e.g., United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." (citations omitted)).

The Court agrees with the Government's assessment that specific identification of the "technical data" in the Manual is not "truly necessary" for preparing a defense to Count 2 and compelling further specificity would be improper.  Given that the parties agree that the Manual contains "technical data," within the meaning of the applicable statues, and given that the Government has provided information in discovery concerning specific contents it contends are "technical data," it appears that Defendants have sufficient information to mount their defense.  Moreover, although the approximately 1,200 pages of the Manual is not trivial, it is not so voluminous that it would even be impracticable, much less impossible, for Defendants to review it to distinguish potentially inculpatory "technical data," from the excluded general principles and public information.  Requiring the Government to provide more specificity would require it to, effectively, disclose its theory of the case and interpret the Manual for Defendants.  Neither is a valid purpose of a bill of particulars.  Defendants' Motion for Bill of Particulars is, therefore, **DENIED**.  Doc. 70.

## II.    *Brady* Motion (Doc. 71)

Defendants request that the Court order the Government to search for, and disclose if discovered, information favorable to the defense that is in the possession of agencies connected to, but not direct participants in, this prosecution. *See generally* doc. 71. The Motion seeks a wide range of specific information from a broad swath of entities not directly associated with the Department of Justice, including foreign governments. *See, e.g., id.* at 6-8. The Government opposed that Motion as "a fishing expedition." Doc. 83 at 8. At the hearing, Defendants narrowed their requests. They argued that, because the Government involved two agencies, the United States Department of State's Bureau of Political-Military Affairs, Directorate of Defense Trade Controls and the United States Army's Counterintelligence Command in its investigation of this case, those agencies are included in the Government's obligations under *Brady*. As limited at the hearing, the Court agrees with the Defendants.

*Brady v. Maryland* held that a defendant is denied due process by the suppression "by the prosecution of evidence favorable to an accused," which "is material either to guilt or punishment." 373 U.S. 83, 87 (1963).

The Rules of Criminal Procedure have recently been amended to emphasize the importance of *Brady* disclosures. *See* Fed. R. Crim. P. 5(f). The Rules also impose a duty on the Government to disclose information "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "*Brady* did not create a criminal right analogous to discovery in a civil case," however. *United States v. Polowichak*, 783 F.2d 410, 414 (4th Cir. 1986) (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977)). The Government's disclosure obligations do not alter the fundamental adversarial character of the legal system and do not require Government attorneys "to undertake a fishing expedition" on a defendant's behalf. *See United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989). "*Brady* and its progeny apply to evidence possessed by a district's 'prosecution team,' which includes both investigative and prosecutorial personnel." *Id.* (internal quotation marks and citation omitted). In this context, the "prosecution team" includes "the prosecutor and anyone over whom he has authority." *Id.*

The Eleventh Circuit does not regard the Government and prosecution team as "monolithic," *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998), but requires "a case-by-case analysis of the extent of

interaction and cooperation between" the entities at issue, *United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979).[1]  *See, e.g., United States v. Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992); *United States v. Ruble*, 2016 WL 2342709, at \*12 (S.D. Ga. Apr. 12, 2016).  Given the case-specific nature of the analysis, the Court has not identified any binding authority that governs the outcome here.  However, the balance of persuasive authority leads to a clear conclusion.  As the United States Court of Appeals for the Ninth Circuit has observed, "under *Brady* the agency charged with administration of [a] statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995).  Given the parties' arguments at the hearing, the Court is satisfied that the two agencies identified by Defendants are substantially responsible for administering the restrictions on the materials at issue in this case and were consulted by the prosecution in the process of commencing this case.  The

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit before October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Government's contention that their involvement was in the nature of expert testimony is not unreasonable, but the information that the prosecution sought, and the agencies provided in response, was more than simply consultative. *Cf. United States v. Morgan*, 302 F.R.D. 300, 304-05 (S.D.N.Y. 2014) (finding FBI experts were not part of the prosecution team when they "educated the prosecutors about various facts," relevant to the prosecution); *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1079-80 (D. Mont. 2005) (finding *Brady* obligations applied where "[t]he prosecution sought information from these agencies which shows knowledge on the part of the government that the agencies have information relevant to [the] case[, and t]he agencies supplied the requested information to the prosecution[ which] shows that the prosecution [had] access to the agencies' files.").

Accordingly, the Court agrees with Defendants that the Government's *Brady* obligation extends to information possessed by the United States Department of State, Bureau of Political-Military Affairs, Directorate of Defense Trade Controls, and the United States Army Counterintelligence Command. To the extent that the Motion requests that the Government provide those disclosures, it is **GRANTED, in**

9

**part**.    However, as another court has noted, "[t]he prosecution's constitutional duty under *Brady* is self-executing, and cannot be enlarged or curtailed by court order." *W.R. Grace*, 410 F. Supp. 2d at 1080.  To the extent that Defendants request specific information, or even categories of information, from the Government, the Motion is **DENIED, in part**. Finally, to the extent that the original Motion sought information from far more agencies or entities, Defendant's counsel confirmed at the hearing that the request was limited to the agencies discussed above. Any request for information from any other agency or entity included in the written Motion is, therefore, **DISMISSED, in part,** as withdrawn. In summary, the Motion is **GRANTED, in part, DENIED, in part, and DISMISSED, in part,** as withdrawn.  Doc. 71

### III.  Motion for *James* Hearing (Doc. 74)

Finally, the Defendants move for the Court to set a briefing schedule leading to a pretrial hearing to determine the admissibility of co-conspirator hearsay statements.  *See generally* doc. 74.  In order for hearsay statements to be admissible under the exception provided in Federal Rule of Evidence 801(d)(2)(E), "the government must establish by a preponderance of the evidence: (1) that a conspiracy existed, (2) that

the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy." *United States v. Harrison*, 246 F. App'x 640, 651 (11th Cir. 2007); *see also, e.g. United States v. James*, 590 F.2d 575 (5th Cir. 1979), *cert. denied*, 442 U.S. 917 (1979). To afford the Government a time to make the required showing, the Court may, but is not required to, hold a hearing before trial. *See, e.g., United States v. Hewes*, 729 F.2d 1302, 1312 (11th Cir. 1984) ("*James* . . . clearly does not establish that [a pretrial proceeding] is the *only* way" to handle a coconspirator hearsay question); *United States v. Sanchez*, 722 F.2d 1501, 1507 (11th Cir. 1984) ("A separate *James* hearing prior to the presentation of the government's case-in-chief, however, is not required." (citations omitted)). Whether to determine the admissibility of coconspirator statements before or at trial is within the Court's discretion. *See, e.g., United States v. Barrios*, 2025 WL 3750693, at *3-*4 (S.D. Fla. Dec. 29, 2025).

The Court declines to hold a pre-trial *James* hearing in this case. While the Court understands from Defendants' presentation that it is likely that determinations of the admissibility of coconspirator hearsay statements will likely need to be made at trial, the Court finds that such

11

a hearing is not the most "reasonably practical" way to proceed in this case. *Cf. Hewes*, 729 F.2d at 1312. The conspiracy alleged in this case is neither so complex nor of such a duration that the showings required to evaluate the admissibility of any statements are likely to be impractical at trial. Moreover, it is not clear that the presentation of the evidence relevant to admissibility incurs the risk of wasted judicial resources, which are the principal danger addressed by a pre-trial hearing. *See, e.g., Hewes*, 729 F.2d at 1312 n. 6. Moreover, it appears that any such presentation would likely be "duplicative of the trial itself and would . . . waste the judicial resources *James* was designed to conserve." *United States v. Marquardt*, 695 F.2d 1300, 1304 (11th Cir. 1983). Defendants' Motion is, therefore, **DENIED**. Doc. 74.

In summary, Defendants' Motion for Bill of Particulars is **DENIED**, doc. 70; their Motion for Release of *Brady* Material is **GRANTED, in part, DENIED, in part**, and **DISMISSED, in part**, as withdrawn, doc. 71; and their Motion for *James* Hearing is **DENIED**, doc. 74.

**SO ORDERED**, this 26th day of February, 2026.

_____
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia

12